James D. MILNE, Petitioner,

v.

STATE of Alaska, Respondent.

No. 3723.

Supreme Court of Alaska.

Feb. 29, 1980.

Charles K. Cranston, Gallagher, Cranston & Snow, Anchorage, for petitioner.

Patrick J. Gullafsen, Asst. Atty. Gen., Daniel W. Hickey, Chief Prosecutor, Avrum M. Gross, Atty. Gen., Juneau, for respondent.

Before BOOCHEVER, C. J., and RABINOWITZ, CONNOR, BURKE and MATTHEWS, JJ.

## OPINION

BURKE, Justice.

This case comes to us on petition and cross-petition for review. Petitioner James D. Milne contends that the superior court erred in partially denying his motion to suppress certain evidence and in refusing to dismiss the charges pending against him, for violation of the speedy trial provisions

of Criminal Rule 45.[1] The State of Alaska, respondent and cross-petitioner, contends that the superior court erred to the extent that it granted petitioner's motion to suppress but that otherwise there was no error.

I

In the superior court petitioner moved to suppress evidence obtained under three search warrants issued by Barrow Magistrate Sadie Neakok. Those warrants were numbered 76–7, 76–8 and 76–9. By written order, suppression of evidence obtained pursuant to warrants 76–7 and 76–9 was denied without comment. As to evidence obtained pursuant to search warrant 76–8, the court's order provided:

All personal records of defendant Milne obtained from Inupiat University are to be suppressed as evidence at defendant's trial. All other records obtained pursuant to search warrant 76–8 will be admissible, subject to proper objection at defendant's trial. The personal records of defendant Milne are to be returned to him immediately.

a. Search warrant 76–7

Warrant 76–7 was issued at the request of Chief Kim L. Moeller of the Barrow Department of Public Safety. That request was supported by an affidavit wherein Moeller stated, among other things, that he had reason to believe that certain accounts, records and checks held by Alaska National Bank of the North, Barrow branch, were: (1) evidence of the crimes of forgery, embezzlement, and misappropriation of state and federal funds, (2) stolen or embezzled property, (3) used as a means of committing a crime, (4) in the possession of a person intending to use the documents as a means of committing a crime, and (5) in the possession of Alaska National Bank of the North, Barrow branch, to which James Milne delivered the documents for concealment.

Moeller then stated the basis for his belief:

[T]he facts tending to establish the foregoing grounds for issuance of the search warrant are as follows: [e]vidence in the forms of records, checks, and other documents are in the petitioners [sic] custody that show probable cause and proof of Forgery, Embezzlement of Federal, State, and University Funds identified in the body of the petition. Also, misappropreation [sic] of funds from Federal, State, and local programs through the Inupiat University of the Arctic.

Attached to the affidavit, without further explanation, were copies of a number of bank statements reflecting various account balances as of June 30, 1976.

In *Keller v. State*, 543 P.2d 1211, 1215 (Alaska 1975), this court noted that the question of whether an affidavit contains sufficient facts to establish probable cause for the issuance of a search warrant "is a question of constitutional stature," and further stated: "It is imperative that a magistrate be presented with adequate supporting facts, rather than mere affirmations of suspicion or belief." (Footnote omitted). The affidavit filed in support of the application for search warrant 76–7 failed to set forth any of the *facts* supporting the affiant's stated conclusion that there was probable cause for issuance of a search warrant. Accordingly, we hold that the affidavit failed to establish probable cause for the issuance of the warrant.

We reject the state's argument that the showing necessary for issuance of a proper search warrant should be relaxed where, as in this case, the warrant is issued in a bush community. The constitutional requirements forming the basis for our decision in this case are well-known and easily complied with.

The state further urges that, even if search warrant 76–7 was improperly granted, the evidence obtained pursuant thereto

---

1. Rule 45 requires a defendant to be tried within 120 days of his arrest, arraignment or the service of a formal charge, whichever is first. Rule 45(b), Alaska R.Crim.P. If not brought to trial within that time, as extended by certain excluded periods, the defendant is entitled to a dismissal with prejudice. Rule 45(g), Alaska R.Crim.P.

should not be suppressed because it would be available to the state on additional grounds. Among other things, the state questions Milne's standing to assert a claim of illegal search and seizure as to a great number of the records, as well as urging that the production of many of those records could be compelled by means other than a search warrant. These additional questions, we believe, should be left for decision by the superior court in the first instance. In the order giving rise to the petition and cross-petition for review, the superior court gave no reasons for its denial of petitioner's motion to suppress, except to say that the motion to suppress evidence obtained "pursuant to" the warrants was denied. Therefore, we can only assume that the superior court viewed the warrants as properly issued and based its refusal to suppress the evidence on that ground. In light of our decision to the contrary, these matters will be remanded to the superior court. At that level, the state can renew its various arguments as to why, despite the absence of a proper search warrant, it should be entitled to retain and use the evidence that is now in its possession as a result of search warrant 76–7.

### b. *Search warrant 76–8*

Search warrant 76–8 authorized a search of "the premises known as Inupiat of the Arctic (model home) main office and the Inupiat University of the Arctic Annex offices at or near Barrow, Alaska." On its face the warrant indicates that it was issued on "sworn testimony . . . given by Kim L. Moeller and Richard Ivey on tape 67-log number 3460." The transcript of the hearing conducted by the issuing magistrate, however, fails to show that either was placed under oath before being questioned, although at a later hearing Magistrate Neakok and Kim L. Moeller both testified that Neakok had placed those individuals under oath sometime before questioning them in open court.

Article I, section 14, of the Constitution of the State of Alaska provides in part: "No [search] warrants shall issue, but upon probable cause, supported by oath or affirmation . . . ." The Fourth Amendment to the Constitution of the United States contains identical language. Implementing those provisions, Rule 37, Alaska R.Crim.P., provides in part:

(a) *Search Warrant—Issuance and Contents.*

(1) A search warrant authorized by law shall issue only on

(i) (aa) affidavit sworn to before a judge or magistrate or any person authorized to take oaths under the law of the state, or

(bb) sworn testimony taken on the record in court, and

(ii) establishing the grounds for issuing the warrant.

Milne argues that it must be concluded that these requirements were violated since there is no record of an oath having been given.

Our review of the record pertaining to search warrant 76–8 satisfies us that, as Magistrate Neakok later testified, both Mr. Ivey and Officer Moeller were sworn prior to testifying the recorded portion of the hearing on the issuance of the warrant. Although there was some disagreement as to just when the oaths were given, Magistrate Neakok and Moeller both testified at the suppression hearing that the witnesses were sworn before they testified. The constitutional requirement of an oath was thus met. We believe, however, that our rules require that oaths be on the record where the application for a search warrant is supported by testimony taken in open court under Criminal Rule 37(a)(1)(i)(bb). Prospectively, we intend to enforce this requirement. Our purpose in doing so is to avoid the necessity of later being forced to speculate whether the oath was in fact given or as to its sufficiency.[2]

---

**2.** This requirement obviously cannot be applied mechanistically in every situation. For example: an injustice to the state would be done in a situation where recording equipment failed during administration of the oath, or such equipment was not available. Accordingly, in cer-

■ Otherwise, we believe the testimony of Richard Ivey and Kim Moeller was sufficient to support the issuance of search warrant 76–8. Ivey, bookkeeper for the university, purportedly witnessed a number of irregularities including forged checks, improper loans, and payments for unperformed services to non-existent businesses. This alleged first-hand knowledge of specific facts supported a finding of probable cause upon which the warrant could be issued.

### c.  Search warrant 76–9

On its face, search warrant 76–9 states that it was issued on sworn testimony by Richard Ivey. It authorized a search of James Milne's residence for certain records and checks which were believed to be: (1) evidence of the crimes of forgery, embezzlement, and misappropriation of state and federal funds, (2) stolen or embezzled property, (3) used as a means of committing a crime, (4) in the possession of a person intending to use the documents as a means of committing a crime, and (5) in the possession of Alaska National Bank of the North, Barrow branch, to which James Milne delivered the documents for concealment. The record, however, shows no testimony by Richard Ivey except that described in the previous discussion concerning the issuance of search warrant 76–8.[3]

Milne argues that search warrant 76–9 is subject to the "same infirmities" as search warrant 76–8, namely: lack of proof that there was sworn testimony to support the magistrate's finding of probable cause. For the reasons already stated, we are satisfied that Ivey was in fact sworn before he testified before the magistrate. Since no other challenge has been made as to the sufficiency of Ivey's testimony to support the issuance of the warrant, we conclude, as did the superior court, that the evidence obtained under search warrant 76–9 should not be suppressed.[4]

## II

Following execution of the three search warrants in late July, 1976, a single count complaint was filed charging petitioner with embezzlement of public money. That complaint was eventually dismissed. Later a multiple count indictment was returned charging petitioner with five counts of forgery (AS 11.25.020(1)), five counts of passing a forged instrument (AS 11.25.020(2)), seven counts of embezzlement by an employee (AS 11.20.280) and one violation of the election campaign disclosure laws (AS 15.13.040 and 15.13.120). Arguing that the present charges against him are based upon the same conduct as the initial charge, petitioner argues that there has been a violation of his speedy trial rights under Criminal Rule 45.[5] We find this contention to be

---

tain circumstances, upon presentation of proof that an oath was properly given, the absence of a record thereof will not be fatal to the warrant.

**3.** The record does contain an affidavit signed by one Allen R. Smith, therein described as Deputy Director of the Barrow Department of Public Safety. That affidavit was apparently prepared in support of the application for search warrant 76–9. However, like the affidavit filed in support of the application for search warrant 76–7, it contained only the following statement of probable cause:

  [T]he facts tending to establish the foregoing grounds for issuance of a search warrant are as follows: Evidence in the form of records, checks, and other documents are in the petitioners [sic] custody that show probable cause and proof of Forgery, Embezzlement of Federal, State and University Funds identified in the body of the petition. Also, misap-

proproation [sic] of funds from Federal, State, and local programs through the Inupiat University of the Arctic.

Therefore, even if we were to assume that the affidavit was considered by the magistrate, it failed to furnish probable cause for issuance of search warrant 76–9.

**4.** Milne also argues that taken together warrants 76–8 and 76–9 authorize a general, exploratory search. Such searches are constitutionally prohibited. *See United States v. Rabinowitz*, 339 U.S. 56, 70 S.Ct. 430, 94 L.Ed. 653 (1950). This contention is not supported by a sufficiently detailed argument to allow us to intelligently rule upon it. Thus, we do not decide the issue at this time.

**5.** Rule 45(c)(1), Alaska R.Crim.P., provides in part:

  (c) *When Time Commences to Run.* The time for trial shall begin running, without demand by the defendant, as follows:

without merit and hold that the superior court correctly denied petitioner's motion to dismiss the indictment.

Affirmed in part, reversed in part, and remanded for further proceeding in the superior court.

(1) From the date the defendant is arrested, initially arraigned, or from the date the charge (complaint, indictment, or information) is served upon the defendant, whichever is first. The arrest, arraignment, or service upon the defendant of a complaint, indictment, or information, relating to subsequent charges arising out of the same conduct, or the refiling of the original charge, shall not extend the time, unless the evidence on which the new charge is based was not available to the prosecution at the time the defendant was either initially arrested, arraigned, or served with the original charge, and a showing of due diligence in securing defendant for the original charges is made by the prosecution[.]